In the Matter of the Arbitration between BAKERY DRIVERS UNION LOCAL 550, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent, and KRUG BAKING COMPANY OF NEW YORK, INC., et al., Appellants.

First Department, July 2, 1963.

*Morris E. Lasker* of counsel( *Theodore W. Kheel* and *Raymond F. Gregory* with him on the brief; *Battle, Fowler, Stokes & Kheel,* attorneys), for appellants.

*H. Howard Ostrin* of counsel (*Herman E. Cooper* and *Robert H. Sand* with him on the brief; *Cooper, Ostrin, De Varco & Ackerman,* attorneys), for respondent.

RABIN, J. For some 30 years the appellants had been engaged in the production and distribution of bakery products in the metropolitan area. In February, 1962 they terminated their business operations. Over the years they employed driver-salesmen to distribute their products in a house-to-house operation. Prior to 1949 this employment had been governed solely by contracts made between the appellants and the driver-salesmen.

In 1949 the drivers for the first time acquired union representation through the plaintiff union. That union entered into a collective bargaining agreement with the employer appellants. This agreement — and the subsequent renewals thereof — contained the following provision: "The Employer reserves the right to have his employees execute individual contracts containing the usual existing provisions and negative covenants. In the event that any provision of this agreement shall conflict with the provisions of such individual contracts, the provisions of this agreement shall prevail. This agreement does not, except to rates of pay and conditions of employment as changed hereby, affect individual contracts previously entered into or to be entered into in the future between individual route salesmen * * * and the Company, and the said contracts shall, except to rates of pay and conditions of employment, remain in full force and effect."

This agreement also contained a provision for arbitration as follows: "Both parties agree that they shall attempt to adjust all complaints, disputes, or grievances arising between the parties hereto, involving questions or interpretations or applications of any clause or matter covered by this agreement, or any act or conduct or relations between the parties hereto, directly or indirectly. In the event the parties are unable to agree, however, after following the grievance procedure set forth above, the matter shall be immediately referred to an arbitrator chosen as described below, who shall decide such dispute within a reasonable time after it shall have been submitted to him, unless such time is mutually extended by the parties. No arbitration shall be adjourned more than once for a period of more than seven (7) days unless mutually agreed upon between the parties."

Sometime after the appellants had ceased doing business they sent to each of the former drivers — without consultation with the union — a statement of account. This account itemized the amounts due the driver for commissions, security, vacation and sick pay, against which was offset moneys due the appellants for "uncollected customer accounts." In those cases where the balance struck was in the driver's favor a check was enclosed. In those cases where moneys were due the appellants, a demand therefor was made.

Many of the drivers accepted the checks which were sent to them together with their respective accounts and made collection thereon. Others did not and instituted suit against the appellants. Some other drivers were sued by the appellants, some defending such suits and others defaulting, thereby enabling

the appellants to enter default judgments against them. There is another category of drivers who accepted no checks, did not sue, nor were they sued.

In October, 1962 the petitioner union demanded arbitration with the appellants pursuant to the collective bargaining agreement of the following items:

" 1. Is John Duffy, an employee of the Krug Baking Company of New York, Inc. [appellants] with more than five years of service * * * and all similarly situated employees [of appellants] entitled to 3 weeks vacation as of January 1, 1962, in addition to a prorata vacation for all times worked thereafter?

" 2. Are employees of [the appellants] with less than five years of service as of January 1, 1962 entitled to a prorata vacation for all time worked thereafter?

" 3. Were the employers justified in holding a route salesman personally responsible for uncollected bills incurred by customers assigned to their respective routes, which bills were payable to the [appellants] on and before the date of discontinuance of the employers' operations? If the employers were not so justified, what should the remedy be?

" 4. Are route salesmen entitled to a refund of all security monies heretofore deposited by them, with interest from date of deposit and without offset against uncollected bills incurred by the employer's customers? "

The appellants rejected the demand, and the union commenced this proceeding to compel arbitration.*

The first question to be answered is whether the arbitration clause of the collective bargaining agreement is applicable to the issues raised by items 3 and 4 of the demand. The petitioner argues that it is, while the appellants contend that the issues raised are governed by the terms of the individual contracts which do not have an arbitration clause, so that the method of their resolution is not dictated by the collective bargaining agreement and its arbitration clause. We conclude that the position of the petitioner is the correct one on this point.

While the individual employee agreements did treat with the subject of security and the customer accounts, so too did the collective bargaining agreement. This latter agreement expressly provided that the drivers, under certain circumstances, were not to be liable for any credit extended up to $3 per customer. If credit were extended in excess of that amount without authority the driver was to be liable therefor.

---

* While appellants originally objected to the entire demand, they now object only to items 3 and 4.

The arbitration clause of the collective bargaining agreement provides for the arbitration — attempts at adjustment failing — of "all complaints, disputes, or grievances arising between the parties hereto, involving questions or interpretations or application of any clause or matter covered by this agreement, or any act or conduct or relations between the parties hereto, directly or indirectly." The items here in dispute — concerned as they are with the driver's responsibilities for uncollected accounts and the return of security deposits — are expressly dealt with in the provisions of the collective bargaining agreement relating to credits, accounts, etc. While the word "security" is not expressly mentioned in the collective agreement it is apparent that the subject of security deposits is directly involved in the paragraph of the agreement dealing with "credits". Any surcharge to the drivers as a result of the extension of excess credit must necessarily affect the amount of the security returnable to them. In addition these items are directly related to "rates of pay and conditions of employment" as treated within the collective bargaining agreement. The fact that these questions are also dealt with in the individual driver's contracts does not take them without the scope of the arbitration clause of the collective bargaining agreement. To the contrary, in the area of "rates of pay and conditions of employment" the latter agreement is expressly made superior.

While we need not so determine, it may also be argued that the broad language of the arbitration clause — "any act or conduct or relations between the parties" — is such as to spell out an agreement to arbitrate not only disputes arising out of the collective bargaining agreement but also all disputes between the parties, be they bottomed on the agreement or on matters dehors the collective bargaining agreement.

A finding that the arbitration clause includes items 3 and 4 of the demand does not suffice, however, to resolve the issues here presented. It must be next determined whether, by reason of the intervening acts of the drivers and the union, arbitration is foreclosed to the union with respect to the claims of certain of the drivers.

As aforesaid, some of the drivers have neither accepted payment nor have they sued or been sued. As to this category there is no bar to arbitration, there having been no act committed in derogation of the union's right to arbitrate in their behalf.

The problem arises with respect to the claims of those drivers who have either accepted payment, commenced suits, or have appeared in or defaulted in suits brought against them by appel-

lants. Does such conduct operate to defeat the union's right to seek arbitration with the employer under the collective bargaining agreement where individual claims have been disposed of by individual settlements and by the individual's participation in the lawsuits? Ordinarily, collective bargaining agreements reserve to the union the right to adjust claims and grievances, and where such agreement contains an arbitration clause it is the union rather than the employees that has the sole right to seek arbitration (see *Matter of Soto [Goldman]*, 7 N Y 2d 397; *Parker* v. *Borock*, 5 N Y 2d 156, 161; *Donato* v. *American Locomotive Co.*, 283 App. Div. 410, affd. 306 N. Y. 966). The situation here, however, is quite different. Here we have parallel agreements entered into between the individual employees and the employer. Such agreements were entered into with the express consent of the union. Implicit in such consent is the right to the individuals to enforce their separate and individual contracts, subject to the "supremacy" provisions of the collective bargaining agreement. To hold otherwise would make illusory the right to enter into such individual contracts. These individual contracts have no arbitration clause and remedies thereunder must be sought in the courts where the individuals seek recourse under such agreements as distinguished from the collective agreement. We have then a situation where the union has a right in the first instance to arbitrate all matters directly referable to the collective bargaining agreement. On the other hand if the union chooses not to arbitrate, the employee — if such matters are the subject of the individual agreement — may pursue his own remedies under that agreement.

The record indicates that the union earlier announced its intention to arbitrate only as to items 1 and 2. With respect to matters contained in items 3 and 4 the union expressly permitted the employees to retain counsel to enforce their rights. Such permission is evidenced by its letter dated March 19, 1962, circulated to union members. Implicit, if not express, in that letter is a consent by the union to have the employees sue under the individual agreement as to the matters contained in items 3 and 4 of the demand. Some did sue — some in turn were sued by the employer. To the extent that the employees sought to resort to the courts it must be concluded that with respect to the claim of such employees no arbitration may now be had by the union on items 3 and 4. A similar result must obtain with respect to those cases where the employer resorted to the courts without objection by the employees.

A different situation, however, is presented where there was no court action initiated either by the employee or the employer.

In those cases — no other forum having been invoked — the union, under its contract, still has a right to act for the employees under the arbitration clause of the collective bargaining agreement with respect to items 3 and 4 of the demand. Therefore, as to this group of employees we conclude that the union was entitled to demand arbitration as to those items.

We are not unaware that some of the employees accepted the payment tendered by the employer and are said to have '' settled '' their claims. We conclude however that the union should not be foreclosed from arbitrating items 3 and 4 with respect to these employees. Where there is an agreement to arbitrate disputes, such matters as claimed settlements of such disputes are for the arbitrators to determine. (See *Matter of Stein-Tex* [*Ide Mfg. Co.*], 9 A D 2d 288.)

In the circumstances we believe that the union is entitled to arbitrate all four items sought to be arbitrated as to claims of employees who have not participated in any court action. As to the claims of employees who have so participated without objection, arbitration may be had only with respect to items 1 and 2.

Accordingly the order entered on December 21, 1962 directing arbitration should be modified in accordance with this opinion. The appeal from the order entered on January 17, 1963 denying rehearing should be dismissed as being academic.

STEUER, J. (dissenting in part). I cannot agree that items 3 and 4 are arbitrable under the collective bargaining agreement.

Primarily the collective bargaining agreement is a supplement to the individual agreements. It makes changes in those agreements primarily in the fields of rates of pay, vacation, sick leave and the like. As pointed out, the collective agreement recognizes and preserves the individual agreements and by its express terms '' does not, except to rates of pay and conditions of employment *as changed hereby,* affect individual contracts ''. (Emphasis supplied.) The collective agreement does not purport to make any change in the security deposited by the driver salesmen. Actually, it does not mention the security and one can read the entire agreement without ever learning that security was deposited, or what it was supposed to secure. The subject is just not dealt with. The majority apparently confuses security with credits and relies on a section of the collective agreement which deals with credits. But that is not what the union seeks to arbitrate. It asks for a determination of whether the drivers are entitled to a return of all security with interest regardless of offsets. This would mean an arbitration of the security provisions in the individual contracts and can mean

nothing else. And this the majority concedes is not arbitrable. So it should be clear that item 4 should be stayed.

Item 3 of the demand for arbitration deals with credits. It is true that the collective agreement has a provision for credits. It changes the individual contracts to the extent that, except under certain conditions, the driver shall not be responsible for the first $3 loss per customer of credit extended. And if the union wished to arbitrate whether this clause was violated in the accounting which the company made with any of its drivers, it would have a perfect right to do so. But that is not what the item seeks. It asks an adjudication that the driver should not be responsible for any credits. Responsibility for credits is not fixed by the collective agreement, it is assumed to exist, and the only change is the exemption of the first $3 per customer. The change is arbitrable, but the drivers' general liability is not.

With the conclusions reached in regard to individual drivers as affected by prior proceedings between them and the employer, I am in accord.

The order appealed from should be modified by eliminating items 3 and 4 of the demand and as to certain drivers in accordance with the majority opinion and, as so modified, affirmed.

STEVENS, J. (dissenting in part). I am in accord with the majority opinion, except that I would exclude item 4 from arbitration and additionally would exclude claims which have been settled and those in which lawsuits have been concluded.

BOTEIN, P. J., and BREITEL, J., concur with RABIN, J.; STEVENS and STEUER, JJ., dissent in part in separate opinions.

Order, entered on December 21, 1962, directing arbitration, modified in accordance with the opinion herein of RABIN, J., without costs. The appeal from order entered on January 17, 1963, denying rehearing, is dismissed as being academic, without costs. Settle order on notice.