GREAT FALLS MILL AND SMELTER-MEN'S UNION NO. 16 OF the INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS and the International Union of Mine, Mill and Smelter Workers, Plaintiffs,

v.

The ANACONDA COMPANY, Defendant.

Civ. No. 2592.

United States District Court
D. Montana,
Great Falls Division.

Nov. 8, 1966.

tana. The plaintiffs (called the Unions) are the bargaining agent for the employees in the plant. This action is brought to enforce the award of an arbitrator under Section 301 of the Labor Relations Management Act.[1]

The dispute revolves about the order in which the employees of Anaconda were called back to work following a strike. The agreement between the Unions and Anaconda contains arbitration provisions. It is not clear from the record just how the controversy came to be submitted, but the parties did agree that an arbitrator should decide this issue:

"Did the Company violate the seniority provisions of the collective bargaining agreement in recalling and assigning employees to work between January 30th and February 12th, 1964?"

A hearing was had and following the hearing the arbitrator made the following award:

"AWARD

"Based upon the considerations set forth above and good and sufficient reasons appearing therefor, it is the decision and award of the undersigned arbitrator as follows:

1. The Company violated the seniority provisions of the collective bargaining agreement in recalling and assigning employees to work between January 30th and February 12th, 1964, in that employees should have been recalled to work during the foregoing period in order of departmental seniority, but were not always recalled in that order.

2. The parties in accordance with their stipulation of record are to work out details relating to the payment of back wages to any employees who were not recalled in proper order."

Anaconda, in support of its motion for summary judgment, urges that the award of the arbitrator was outside the scope of the issues submitted. This argument is

Charles V. Huppe, Helena, Mont., for plaintiffs.

R. Lewis Brown, Jr., William J. Kelly, Butte, Mont., for defendant.

OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

The defendant (called Anaconda) owns and operates a plant in Great Falls, Mon-

1. 29 U.S.C. § 185.

based upon language contained in the arbitrator's opinion.[2]

The arbitrator, in the course of his opinion, said:

"Contract Provisions Involved.

The contract provisions relating to seniority extend over several pages. Suffice to say for the purposes of this case that they provide, among other things, for both 'plant seniority' and 'departmental seniority'; that in the event of layoffs in a department, plant seniority is to prevail in recalling employees to work, and that there are no specific provisions relating to order of recalling employees after strikes."

Anaconda argues on the basis of language in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593,[3] 80 S.Ct. 1358, 4 L.Ed.2d 1424, that the arbitrator having held that there were no specific provisions relating to the recalling of employees after strikes, must have gone out of the collective bargaining agreement to reach the result he did.

The court does not so interpret the award. The Unions have urged that the provisions of Section 7 of Article 7, required that the employees be recalled in order of plant seniority. So far as is pertinent here, those provisions read:

"Section 7. Layoffs in a Department.

(a) When it is necessary to curtail the work force in a department or a department subdivision, the employee at the bottom of the applicable seniority list shall be the first to be curtailed. His plant seniority shall then govern as to whether he shall be retained in the plant or curtailed from the plant. The company will furnish the local Union a list of those employees who are laid off.

(b) In recalling employees after a curtailment they shall be recalled as closely as possible in the reverse order to that described in Part (a) of this section provided they can perform the work available * * *."

■ Although the contract contains no specific provisions regarding seniority following strikes, the arbitrator might have interpreted the word "curtailment" in Section 7(b) to include the reduction in work force following a strike. The thought that the arbitrator intended to enforce a contractual obligation is reinforced by his use of the word "interpretation". As guides to interpretation the arbitrator relied upon prior history and the statements of an Anaconda superintendent. In any event it is not apparent that the arbitrator went beyond the submission and unless it is apparent the award must be enforced.[4] If the arbi-

---

2. It is not contended that the interpretation and application of the agreement was not subject to compulsory arbitration under the collective bargaining agreement—only that the arbitrator went beyond the issues actually submitted to him.

3. "Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does sit to dispense his own brand of industrial justice. He may of course look for guidance from any sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

4. "The opinion of the arbitrator in this case as it bears upon the award of

back pay beyond the date of the agreement's expiration and reinstatement is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission. Or it may be read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement. A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. * * * It is not apparent that he went beyond the submission." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at p. 597, 80 S.Ct. at p. 1361.

trator did interpret the word "curtailment" to include the reduction in the work force as the result of a strike, even though the court should feel that he stretched the word too far, such would not indicate an infidelity to the arbitrator's obligation. All it would indicate is that he saw in the word more than the court does, and it is what the arbitrator sees that counts, especially where, as here, the collective bargaining agreement makes his decision final.[5]

It is therefore held that Paragraph 1 of the award is valid and binding on both parties and the defendant's motion for summary judgment is denied.

As indicated from the award itself, it was contemplated that the parties could agree on the amounts due various employees once the interpretation of the contract had been determined. This they have not been able to do. The Unions now ask that the court, on the basis of the seniority list attached to the complaint and a list of the dates upon which employees went back to work, determine the amounts to be due or, in the alternative, take evidence as to the amounts due. The application of the contract to the facts in this case is quite as much a function of the arbitrator as is the interpretation of the contract. Questions such as the availability of the employee for work and whether the available employees could perform the work available are perhaps involved. Defendant's motion for a summary judgment, insofar as it asks this court to take evidence or award a dollar amount, is denied.

In accordance with the technique used in Enterprise Wheel & Car Corp. v. United Steelworkers of America, 4 Cir., 269 F.2d 327 (1959) approved in United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 it is ordered that that parties take steps to complete the arbitration so that the award will contain a complete adjudication of the matters in dispute.

The plaintiff will prepare a judgment in accordance with Rule 11 of the Rules of this court.

---

5. "The question of interpretation of a collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns contruction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at p. 599, 80 S.Ct. at p. 1362.