**L. O. KOVEN & BROTHER, INC., a New Jersey corporation, Plaintiff,**

v.

**LOCAL UNION NO. 5767, UNITED STEELWORKERS OF AMERICA, AFL–CIO, an unincorporated association, Defendant.**

Civ. A. No. 1031–64.

United States District Court
D. New Jersey.

Feb. 23, 1966.

Carpenter, Bennett & Morrissey, Newark, N. J., for plaintiff.

Rothbard, Harris & Oxfeld, Newark, N. J., Abraham L. Friedman, Newark, N. J., of counsel, for defendant.

MEANEY, District Judge.

Plaintiff, L. O. Koven & Brother, Inc. (hereinafter sometimes referred to as Koven) brings this action against Local Union No. 5767, United Steelworkers of America, AFL-CIO (hereinafter sometimes referred to as the Union), to enjoin defendant from prosecuting or otherwise presenting or submitting to arbitration a claim for vacation pay benefits allegedly due to certain members of the defendant Union. The Union counterclaims, alleging that plaintiff violated a collective bargaining agreement subsisting between the parties in refusing to arbitrate the Union's claim, and demanding judgment that it is entitled to have its claim, "Grievance No. 3–64," submitted to arbitration.

The court makes the following findings of fact and conclusions of law on the basis of the pleadings, exhibits, briefs and an agreed statement of facts, no hearing having been held.

## FINDINGS OF FACT

1. Plaintiff is the successor by merger to Koven Fabricators, Inc. (As used herein, "Plaintiff" and "Koven" shall apply both to plaintiff and its said predecessor by merger.)

2. At all times material herein plaintiff was and is a corporation of the State of New Jersey having its principal office and place of business in Dover, New Jersey, and was and is engaged in commerce within the meaning of Section 301 of the Labor Management Relations Act, 1947 (29 U.S.C. § 185).

3. At all times material herein defendant was and is an unincorporated association having its principal office and place of business in Dover, New Jersey, and was and is a labor organization within the meaning of Section 301 of the Labor Management Relations Act, 1947 (29 U.S.C. § 185).

4. On or about June 17, 1960, in Dover, New Jersey, plaintiff entered into a collective bargaining agreement with respect to certain of its employees, which agreement expired by its terms at mid-

night, June 17, 1963. By a subsequent agreement said collective bargaining agreement was extended to midnight, June 17, 1965.

5. Article XVI of said collective bargaining agreement provided for the fixing of vacation periods for the members of the collective bargaining unit, or the equivalent in pay, and further provided that "In order to be eligible for a vacation, the employee must have worked one thousand (1000) hours or more during the period from June 1 to June 1 of the preceding year * * * ."

6. The collective bargaining agreement also provided for a grievance procedure for the handling of disputes between the parties as to the meaning of any of the provisions of the agreement, the final step in such grievance procedure being the submission of the dispute to arbitration.

7. On September 4, 1963 plaintiff filed a Petition for Arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, et seq., in the United States District Court for the District of New Jersey. The petition was apparently an original petition filed pursuant to Section 322 of the Bankruptcy Act, 11 U.S.C. § 722, since there is no indication of a pending bankruptcy proceeding at the time the petition was filed. See 11 U.S.C. § 721.

8. On or about January 8, 1964 defendant filed eight claims against plaintiff in the said bankruptcy proceedings. These claims were numbered 453 to 460 by the Referee in Bankruptcy. Copies of said claims were annexed to the Agreed Statement of Facts as exhibits in this case.

9. On January 10, 1964 an Order of Confirmation, a copy of which was annexed to the complaint, was entered in said bankruptcy proceedings by the Referee in Bankruptcy, confirming a Plan of Arrangement filed by plaintiff, a copy of which was also annexed to the complaint.

10. On May 18, 1964 defendant, in consideration of the payment to it of $7,000.00, executed and delivered to plaintiff a General Release which refers to a Stipulation and Order dated April 30, 1964. Both the General Release and the Stipulation and Order are exhibits in this case.

11. On or before June 15, 1964 defendant submitted to plaintiff a "Grievance Report" designated as "Grievance No. 3–64" (a copy of which was annexed to the complaint and is an exhibit), wherein defendant demanded the payment of vacation benefits for certain of plaintiff's employees.

12. On or about July 29, 1964 plaintiff, pursuant to defendant's request, met with defendant to discuss said Grievance No. 3–64 and stated to defendant that any and all claims for vacation benefits are barred and discharged by virtue of the aforesaid Order of Confirmation and General Release.

13. On July 30, 1964 defendant requested the American Arbitration Association to submit an arbitration panel in its dispute with plaintiff with respect to Grievance No. 3–64. Thereafter the American Arbitration Association designated Dr. Thomas A. Knowlton as arbitrator in the matter.

14. There is set forth in the Agreed Statement of Facts a list of the employees who worked 1,000 hours or more for plaintiff between June 1, 1963 and the date on which their active employment with plaintiff ceased. The list indicates the last day on which each of the employees worked for plaintiff, the number of hours worked by each between June 1, 1963 and January 10, 1964, and the number of hours worked by each between January 11, 1964 and the last day of employment with plaintiff. None of the employees had worked as much as 1,000 hours between June 1, 1963 and September 3, 1963, the day before plaintiff filed its petition for arrangement.

## DISCUSSION

I. *Whether the International Union is an indispensable party*

In essence, defendant is claiming that plaintiff is required by the collective bargaining agreement to arbitrate the vacation pay demand. Plaintiff contends that there is nothing to arbitrate since defendant's claim has been discharged by operation of law, viz., either by the General Release or by the Order of Confirmation.

Defendant also claims that the complaint should be dismissed for plaintiff's failure to join an indispensable party, namely the United Steelworkers of America, AFL-CIO (hereinafter referred to as the International). Plaintiff counters by contending that, while the International is not an indispensable party to the main claim since it (the International) has not sought arbitration of the grievance, defendant's counterclaim must be dismissed on the ground that not it (the defendant) but the International is the party with whom the plaintiff contracted and that only the International may compel arbitration of disputes arising out of the contract.

These related claims must be dealt with preliminarily.

 It is a general rule of contractual construction that where the meaning of contractual language is doubtful or ambiguous the best guide is furnished by the parties' construction as manifested by their conduct. Journeymen Barbers, etc., Local 687 v. Pollino, 22 N.J. 389, 126 A.2d 194 (1956); Pittsburgh Railways Co. v. Equitable Life Assurance Society, 288 F.2d 640 (3rd Cir. 1961).

The collective bargaining agreement was made between plaintiff and "United Steelworkers of America, AFL-CIO, on behalf of itself and members of Local Union No. 5767 (hereinafter referred to as the "Union")." It is unclear whether the "Union" thereafter referred to in the agreement refers to the International or to Local No. 5767, the defendant. This ambiguity is heightened by the occasional use of the terms "Local Union" and "International Union" in the agreement, whereas the term "Union" is used by itself throughout most of the agreement. (See, for example, Article XIV, Sections 13 and 14). The ambiguity exists in the Article on Grievance Procedure, with which the court is presently concerned, where there are references both to the "Union" and to the "International Union."

 A number of circumstances compel the conclusion that it was the understanding of the parties that the "Union" to which the collective bargaining agreement refers, at least for the purposes of the grievance procedure, is the defendant, and that therefore the International is not an indispensable party, either as to the claim or to the counterclaim. These circumstances are the following:

1. The *defendant* filed the claims in the bankruptcy proceeding against plaintiff, referred to in Finding of Fact No. 8. These claims were clearly based on the collective bargaining agreement;

2. The *defendant* executed the General Release of May 18, 1964 and the Stipulation and Order dated April 30, 1964, referred to in Finding of Fact No. 10;

3. The *defendant* submitted to plaintiff on June 15, 1964 the Grievance Report referred to in Finding of Fact No. 11;

4. On or about July 29, 1964 plaintiff, at *defendant's* request, met with *defendant* to discuss "Grievance No. 3–64" (Finding of Fact No. 12);

5. On July 30, 1964 the *defendant* requested the American Arbitration Association to submit an arbitration panel in its dispute with plaintiff with respect to Grievance No. 3–64 (Finding of Fact No. 13).

It is therefore clear that the International is not an indispensable party since it does not have an interest in the matter "of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent

with equity and good conscience." Lumbermen's Mut. Casualty Co. v. Elbert, 348 U.S. 48, 52, 75 S.Ct. 151, 154, 99 L.Ed. 59 (1954).

## II. *The Issue of Arbitrability*

■ The court is fully aware of the strong federal policy favoring the settlement of industrial disputes by arbitration, as expressed by the authorities set forth in defendant's brief. But it is also clear from the cases that the question whether or not the employer is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

■ Although no cases directly in point have been brought to the court's attention, or have been discovered by independent research, it appears to this court that arbitration must be denied where it is shown that the claim, of which arbitration is sought, has been discharged by operation of law. The Supreme Court in the *Wiley* case, supra, held that it was a question for the court whether the disappearance by merger of a corporate employer which had entered into a collective bargaining agreement automatically terminated all rights of the employees covered by the agreement, or whether the successor employer was bound to arbitrate disputes with the union under the agreement.

Having decided that arbitration may not be ordered where the disputed underlying claim is discharged by operation of law, the court must now determine whether defendant's claim has been so discharged, i. e., whether the claim is arbitrable. Plaintiff argues that the claim has been discharged either by the Order of Confirmation or the General Release dated May 18, 1964.

## III. *The General Release*

■ The release, referred to in Finding of Fact No. 10, states that the "United Steelworkers of America, Local Union 5767," in consideration of the sum of $7,000.00, has "remised, released and forever discharged" the plaintiff, its receiver and *"their successors* and assigns" from all actions in law or in equity which the Union "ever had, now has or * * * hereafter can, shall or may have" against plaintiff or its receiver "from the beginning of the world to the day of the date of these Presents, *specifically excluding, however, the Unfair Labor Practice claim filed by the Union before the National Labor Relations Board, Case #22–CA–1854, and the proceedings presently pending thereon."* (Emphasis indicates typed matter; rest of quoted matter is printed.)

The Release then states that it is executed in accordance with the Stipulation and Order of April 30, 1964, referred to in Finding of Fact No. 10.

Defendant argues that since the Stipulation, imported into the Release by the terms of the latter, indicates that the purpose of the Stipulation was to settle claims 453 to 460 in the bankruptcy proceedings (referred to in Finding of Fact No. 8), it follows that the General Release did not release plaintiff from the present claim for vacation pay benefits.

However, paragraph 3 of the Stipulation provides that upon receipt of the $7,000.00 from plaintiff's receiver, defendant was to execute and deliver a *general release* to plaintiff and its receiver. Both the Release and the Stipulation specifically exclude from the effect of the release *only* the unfair labor practice claim mentioned in both instruments, which has nothing to do with the subject matter of this action. Aided by the maxim *expressio unius est exclusio alterius,* the court finds that the necessary effect of the General Release was to release plaintiff of *all* claims, including the instant claim for vacation pay benefits, which defendant may have asserted against plaintiff on the day the Release was executed, save only that claim which was specifically excluded from the Release.

■ Therefore, defendant's claim, having been discharged by the General

Release of May 18, 1964, may not be submitted to arbitration as it is not arbitrable under the collective bargaining agreement.

## IV. *The Order of Confirmation*

There is a further reason why defendant's claim may not be submitted to arbitration and that is because it was discharged by the Order of Confirmation of January 10, 1964.

That Order, in accordance with Section 367 of the Bankruptcy Act, 11 U.S.C. § 767, provided in part that: "* * * the Plan of Arrangement as amended and its provisions shall be binding upon the Debtors, upon any persons issuing securities or acquiring the property under the Plan of Arrangement, and upon all creditors of the Debtors, whether or not they are affected by the Plan of Arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed, and are allowable * * *."

Section 371 of the Bankruptcy Act, 11 U.S.C. § 771, provides: "The confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but excluding such debts as, under section 35 of this title, are not dischargeable."

11 U.S.C. § 35, Section 17 of the Bankruptcy Act, provides: "(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (5) are for wages which have been earned within three months before the date of commencement of the proceedings in bankruptcy due to workmen, servants, clerks * * *."

Defendant contends that its claim for vacation pay benefits was not discharged by the order of confirmation since the said benefits constitute "wages" within the meaning of 11 U.S.C. § 35.

It is true that the courts have generally regarded vacation pay as wages under the Bankruptcy Act. In re Public Ledger, Inc., 161 F.2d 762 (3rd Cir. 1947); In re Wil-Low Cafeterias, 111 F.2d 429 (2nd Cir. 1940); Division of Labor Law Enforcement, State of Cal. v. Sampsell, 172 F.2d 400 (9th Cir. 1949); United States v. Munro-Van Helms Co. Inc., 243 F.2d 10 (5th Cir. 1957).

■■ Claims in a proceeding under Chapter XI of the Bankruptcy Act are fixed as of the date of the filing of the petition for an arrangement. In re Lieb Bros. Inc., 150 F.Supp. 68 (D.N.J.1957), affirmed 251 F.2d 305 (3rd Cir. 1957). Therefore, wages claimed must have been earned within the three months prior to the filing of the petition and must also be due on the date of filing. Division of Labor Law Enforcement, State of Cal. v. Sampsell, supra. As the court in the last cited case said: "If any employee here had not, prior to bankruptcy, completed a year's continuous service no compensation or vacation time would have been due him, regard being had to the wage agreement." 172 F.2d at 402.

Further, the court in In re Wil-Low Cafeterias, supra, noted: "The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was *completely earned* and only the time of receiving it was postponed." 111 F.2d at 432, cited in In re Public Ledger, Inc., supra, 161 F.2d at 767. (Emphasis supplied).

■ In the instant case the collective bargaining agreement provided for vacation pay only for those employees who have worked 1,000 hours or more between June 1 and June 1 of the year preceding the vacation period. Since no employee had worked 1,000 hours between June 1, 1963 and the time of the filing of the petition, it appears that none had earned the vacation benefits within the three-month period preceding the date of filing, and this court so holds. Therefore defendant's claim for vacation pay benefits was discharged by the Order of Confirmation.

 Defendant also claims that vacation pay earned by services performed while the business was under the control of the trustees after the petition for arrangement was filed is entitled to the priority of an administration expense, under 11 U.S.C. § 104(a) (1). While In re Public Ledger, Inc., supra, supports that proposition, fatal to defendant's contention is the fact that no claim for such priority was ever filed.

11 U.S.C. § 755a provides that "(w)here a petition is filed under section 722 of this title, subdivision (n) of section 93 of this title shall apply."

11 U.S.C. § 93(n) provides: "Except as otherwise provided in this title, all claims provable under this title * * * shall be proved and filed in the manner provided in this section. *Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed.*" (Emphasis supplied).

 The first meeting of creditors where an original petition is filed pursuant to 11 U.S.C. § 722 must be held no later than thirty days after the mailing of notice of such meeting to debtors, which mailing must be made within ten days after the petition is filed. 11 U.S.C. § 734. And see 8 Collier on Bankruptcy, pp. 617–620 (14th Ed. 1964).

The first meeting of creditors, then, could have been called no later than forty days after the petition was filed on September 4, 1963; and all claims, to be allowable, must have been filed within six months after said meeting.

 The time limitation of 11 U.S.C. § 93(n) must be strictly observed and "under no circumstances * * * may the court admit a claim to untimely proof, but * * * is under a duty to disallow it, with no power to substitute equitable considerations for the manifest intent of Congress." 3 Collier on Bankruptcy, at p. 383 (14th Ed. 1964). And see In re Supernit, Inc., 186 F.2d 130 (3rd Cir. 1950); In re Mellen Manufacturing Co., 287 F.2d 37 (3rd Cir. 1961).

Defendant, having made no timely proof of claim, is barred from asserting any such priority of claim at this point.

### CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and subject matter. 29 U.S.C. § 185; Black-Clawson Co., Inc., etc. v. International Ass'n of Machinists, 313 F.2d 179 (2nd Cir. 1962); Local 33, International Hod Carriers, etc. v. Mason Tenders, etc., 291 F.2d 496 (2nd Cir. 1961).

2. Defendant's claim for arbitration of its claim for vacation pay benefits for certain of its members has been discharged by operation of law.

3. Plaintiff is entitled to an order restraining defendant from submitting said claim to arbitration, or in any other way from prosecuting or presenting said claim to arbitration.

Let an appropriate order be submitted.