Lorraine LE BEAU et al., Plaintiffs-Appellants,

v.

LIBBY–OWENS–FORD COMPANY, Defendant-Appellee.

No. 72–1994.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1973.

Decided July 17, 1973.

Marion W. Garnett, Chicago, Ill., Martin Slate, E. E. O. C., Washington, D. C., for plaintiffs-appellants.

Stewart R. Jaffy, David Clayman, Columbus, Ohio, Charles J. Griffin, Jr., Chicago, Ill., John G. Poust, Terrence E. Kiwala, Chicago, Ill., Andrew J. O'Connor, Ottawa, Ill., for defendant-appellee.

Before CLARK, * Associate Justice, and KNOCH and CASTLE, Senior Circuit Judges.

Mr. Justice CLARK.

Appellants, forty-six women employees of Libbey-Owens-Ford Company (LOF) at Ottawa, Illinois, filed this sex discrimination class action under the Civil Rights Act of 1964 [1] against LOF, the United Glass and Ceramic Workers of North America, AFL–CIO–CLC (International Union) and Local 19, United Glass and Ceramic Workers (Local 19). The claim was based on a complaint filed with the Equal Employment Opportunity Commission (EEOC) on March 16, 1970, in which the appellants claimed that LOF and Local 19 had entered into collective bargaining agreements which discriminated against female employees at the Ottawa plants by (1) limiting women to certain jobs and departments and (2) failing to afford them the same protections against lay off and recall privileges that were accorded male employees. Both injunctive relief and back pay were sought.

The International Union moved to dismiss on the grounds that it had not been named as a respondent before the EEOC, that it was not "doing business" in Illinois for purposes of jurisdiction

and that Local 19, upon whom service had been made, was not its agent since the Local was self-governing and autonomous with respect to the matters complained of in the suit. The District Court granted this motion, whereupon, LOF and Local 19 moved to dismiss on the ground that the International Union was an indispensible party. The District Court held that the International Union was a party necessary "for a just adjudication under Rule 19," Fed.R.Civ. P. and would be "adversely affected" by an adjudication in its absence, and it therefore dismissed the action. We affirm the dismissal of the International Union on the ground that it was not named as a respondent before the EEOC but reverse the judgment dismissing the suit against LOF and Local 19, finding a misapplication of Rule 19.

1. *The Dismissal of the International Union:*

■ None of the complainants before the EEOC named the International Union as a respondent and that Union never appeared or participated before the Commission. Title VII employment discrimination suits are permitted only "against the respondent named in the charge" before the EEOC. 42 USC § 2000e–5(f)(1). This policy decision is based on the Congressional purpose of encouraging conciliation and voluntary settlements of disputes and is supported by a long line of case authority: Bowe v. Colgate-Palmolive Company, 416 F.2d 711, 719 (7 Cir. 1969); Mickel v. South Carolina State Employment Service, 377 F.2d 239, 241 (4 Cir. 1967), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166; Chrapliwy v. Uniroyal, 5 EPD § 8518, p. 7473 (1973); Jamison v. Olga Coal Co., 335 F.Supp. 454, 460–461 (W. Va.1971); Butler v. Local No. 4 and Local No. 269, Laborers' International Union, 308 F.Supp. 528, 530–531 (N.D.Ill. 1969). *See* Waters v. Wisconsin Steel Works, 427 F.2d 476, 485–486 (7 Cir.

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

1. As amended by the Equal Employment Opportunity Act of 1972, 86 Stat. 103 (1972).

1970), cert. denied sub nom. United Order American Bricklayers v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

### 2. *The Dismissal of LOF and Local 19:*

As we have noted this dismissal was based on Rule 19, Fed.R.Civ.P. This rule mandates two separate but interrelated inquiries. First, is the absent party a person "to be joined if feasible"; and, second, if not feasible should the court in equity and good conscience allow the action to proceed or treat the absent party as indispensible. The desirability of joining a party depends on whether (1) complete relief can be granted in his absence; and (2) whether his interests will be prejudiced or those already parties will be subjected to a substantial risk of incurring inconsistent obligations. Where joinder is desirable but not feasible, the Rule provides criteria for determining whether the suit should be dismissed; the possible prejudice to the absent person or to those who are parties resulting from the entry of the judgment; the possibility of shaping relief to avoid such prejudice; the adequacy of the judgment entered in the person's absence; and the alternatives that are available to the complainant if the action is dismissed for nonjoinder. See generally Provident Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The application of Rule 19, of course, turns on the facts of each case. In the present case this application requires pragmatic consideration of the roles of LOF, the International Union and Local 19 in the formulation of the practices complained of as discriminatory and the stake each has in the same.

Collective bargaining negotiation between LOF and the Glass and Ceramic Workers Union has been carried on at two levels. At the LOF company-wide level master agreements have been negotiated and signed between LOF and the International Union. Such agreements govern wages, hours and conditions of employment for all union members working at LOF's various plants. In some instances, however, the master agreement expressly permits variation of its general provisions by individualized agreements at the plant or factory level. For instance, Section 5 of the 1968 master agreement establishes departmental (as opposed to plant) seniority as the general rule for purposes of promotion, lay off, and recall of employees previously laid off. Under this rule an employee laid off from one department is out of work, although he may have worked at the particular plant longer than another employee working in a different department.

Section 9 of the master agreement, however, provides that written agreements at specific LOF plants previously or subsequently entered into modifying the seniority rules set out in the master agreement shall supersede its general rules. Local 19 and LOF's Ottawa plant management negotiated and signed a "Seniority Security Agreement" on January 6, 1964, which provided for a seniority system materially different from that prescribed in the master agreement.[2] Instead of departmental seniority, the local agreement called for plant seniority to govern lay off and recall decisions at the Ottawa plants. Thus, if an employee laid off from one department had more plant seniority than an employee in some other department, the former could displace the latter. Similarly, if both employees were laid off, the senior plant employee had the right to first recall, even though the

---

2. This agreement was signed by the "LIBBEY-OWENS-FORD GLASS COMPANY, OTTAWA PLANTS" and "UNITED GLASS AND CERAMIC WORKERS OF NORTH AMERICA, AFL–CIO–CLC, LOCAL #19." The first signature for the Local is identified as "President-Local #19." On March 5, 1970, the agreement was amended by a document entitled "Security Seniority Agreement for Plants #5 and #7—Ottawa, Illinois" and signed "for the Union" by Joseph S. Corrigan, "President, Local 19," the Local's two Vice-Presidents, and other union members.

open position was in a department in which he had never worked and the department had not yet recalled all of its own employees on the lay off list. But the local agreement was expressly made applicable to male employees only. Female employees were subject to displacement by male employees from another department with greater plant seniority, but apparently the female employees were themselves limited to the departmental seniority prescribed by the master agreement; they could not use their plant seniority to avoid lay off or obtain earlier recall.

3. *Application of Rule 19:*

■ (a) On the basis of these facts we are not convinced that the International is a party to be joined if feasible under Rule 19(a). Complete relief can be accorded appellants by money damages and such injunctive relief as is necessary to prevent future discrimination and to eliminate the effects of past illegal discrimination. No party has called to our attention, and we have been unable to find on our own, any agreement negotiated by the International Union which would be in any way affected by such a judgment. In these circumstances Rule 19(a) does not require the presence of the International. See Butler v. Local No. 4 and Local No. 269, Laborers' Union, 308 F.Supp. 528, 532 (N. D.Ill.1969). *Cf.* I. O. Koven and Bros. Inc. v. Local Union 5767, United Steelworkers, 250 F.Supp. 810, 813–814 (D. N.J.1966), aff'd in part, and rev'd in part on the other grounds, 381 F.2d 196 (3 Cir., 1967).

Local 19 and LOF make much of the fact that the International Union is the sole and exclusive bargaining agent for appellants and other employees at LOF's Ottawa plants and that the local, male-only seniority agreement was negotiated on the basis of authority conferred in Section 9 of the master agreement. Section 9 empowers a specific plant's management and the Industrial Relations Committee composed of local union officers and other members to modify the master agreement's seniority rules by mutual assent. Thus, it is argued that the local agreements are really a part of the master agreement which is negotiated and signed by the International Union and that the local agreements are negotiated and signed by members of Local 19 in their capacity not as members and officers of the autonomous Local but as members of the International Union. We reject this analysis. It is the very sort of formalistic, inflexible reasoning that Rule 19 was designed to avoid. Provident Bank & Trust Co. v. Patterson, *supra*. The question is what practical prejudice will the International Union, Local 19 and LOF risk if the case is adjudicated in the International Union's absence. We see none. Section 9 of the master agreement indicates a decision by LOF and the International Union that seniority should be determined, if possible, by mutual agreement at the plant level. By delegating to local union members the power and responsibility to represent their own interests on the seniority issue, the International Union necessarily decided that uniformity was undesirable or at least non-essential. If appellants prevail, only local agreements and practices will be affected. It would not appear necessary for the District Court to modify any language in the master agreement or take any other action that might affect the interests of the International Union's members outside Local 19. Likewise, the record reveals that Local 19 has its own treasury that will be available to satisfy any monetary judgment that might be rendered against it. There has been no suggestion that the International Union would somehow be liable for a judgment rendered against Local 19.

Nor does there appear to be any substantial risk that the LOF or Local 19 will be prejudiced by adjudication in the International Union's absence. Local 19 states that LOF would be subject to suit by the International Union over its con-

tract and therefore subject to the risk of inconsistent judgments. We doubt, however, that the International Union would have standing to enforce a local agreement, especially in the event local practices and agreements are adjudged illegal and discriminatory in this suit. However, we need not pursue this inquiry further since in its appellate briefs the Company makes no mention of the risk of prejudicing its own interests as a reason for dismissing the suit.

■ (b) Even assuming that the International Union is a party to be joined if feasible pursuant to Rule 19(a), the District Court's decision to dismiss the suit in view of the jurisdictional bar to joining it was error under Rule 19(b). Any interest the International Union has in preserving local seniority agreements against appellants' attack is too speculative to justify dismissal of the suit against Local 19 and LOF. Arguments on behalf of the International Union are "particularly non-compelling" given its voluntary withdrawal from the suit. Chrapliwy v. Uniroyal, Inc., 5 EPD ¶ 8588, p. 7723 (1973). Local 19 appears to be an adequate representative of the International Union's interests in this litigation. See United States v. Chesapeake and Ohio Railway, 5 FEP 308, 316 (4 Cir. 1972). Appellants, on the other hand, would be substantially prejudiced by a dismissal of their suit. At the least such a decision would require them to file another complaint with the EEOC naming both unions and LOF as respondents and then, with the Commission's consent, to again file suit. Some or all relief may then be barred by limitation, and in any event, substantial delay would be entailed. In addition, the International Union might, as it did here, seek a dismissal for lack of personal jurisdiction. If the International Union prevailed, appellants would be permanently barred from all relief. In the light of these considerations we conclude that appellants' suit against the LOF and Local 19 should not have been dismissed under Rule 19(b).

The judgment dismissing the International Union is affirmed; the judgment dismissing LOF and Local 19 is reversed and the case is remanded for further proceedings.