**Jay TILLMAN, Plaintiff-Appellant,**

v.

**CITY OF MILWAUKEE,
Defendant-Appellee.**

No. 82–2147.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 7, 1983.

Decided Aug. 23, 1983.

Jeffery R. Myer, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiff-appellant.

Nicholas M. Sigel, Milwaukee, Wis., for defendant-appellee.

Before BAUER and COFFEY, Circuit Judges, and HOLDER, District Judge.*

COFFEY, Circuit Judge.

Jay Tillman appeals from the dismissal of his complaint against the City of Milwaukee, Wisconsin which sought injunctive relief and reinstatement to employment with backpay and retroactive seniority. The district court dismissed Tillman's complaint pursuant to Rule 19 of the Federal Rules of Civil Procedure after determining that Tillman had failed to name an indispensable party, the Wisconsin Department of Industry, Labor, and Human Relations ("DILHR"), since the court believed it did not have jurisdiction over it. We agree with the district court that DILHR was a party whose joinder was necessary for the complete adjudication of Tillman's complaint. Additionally, we hold that the court in fact had jurisdiction under *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), to order the department joined as a party defendant if the court determined that it equitably should have been joined. Accordingly, this

* The Honorable Cale J. Holder, District Judge of the Southern District of Indiana, is sitting by designation.

action is ordered remanded to the district court for this equitable consideration.

## I.

On June 19, 1978, Jay Tillman received an appointment to the position of "Electrical Worker" in the City of Milwaukee's classified service. An apprenticeship program for the position of "Electrical Mechanic" had been approved by DILHR in 1976. In February of 1979, Jay Tillman became one of the first persons appointed to the apprenticeship program and two years later, on January 16, 1981, he was discharged from the apprentice position as his supervisors felt he had not made "sufficient progress in accord with indentured apprentice 'standards' as administered by the joint union/management Training Advisory Committee."[1] The following month the City requested the DILHR to annul Tillman's apprentice indenture.[2] Shortly thereafter, on February 20, 1981, Tillman filed a written objection with the DILHR to the annulment claiming that the City's Bureau of Traffic Engineering and Electrical Services had subjected him to unfair and unequal standards. Six weeks later, on April 1, 1981, Tillman filed a racial discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC") against the City of Milwaukee and the Electrical Mechanic Apprentice Training Advisory Committee. On August 27, 1981, the EEOC issued Tillman a "Notice of Right to Sue" letter in reference to Tillman's alleged discrimination charge against the City of Milwaukee. On November 27, 1981, Tillman filed an action in the United States District Court for the Eastern District of Wisconsin alleging that the City of Milwaukee discriminated against him because of his race by discharging him while he was an apprentice in the Electrical Mechanic apprentice program.

The DILHR conducted an administrative hearing on the City's request to annul the indenture and issued a decision and order on December 9, 1981, annulling the apprenticeship indenture agreement entered into between Tillman and the City of Milwaukee.

The City of Milwaukee brought a motion to dismiss Tillman's complaint because of the alleged omission of an indispensable party (DILHR) who, the City argued, was not within the jurisdiction of the court. After reviewing the briefs filed by the parties, the district court determined that:

"[T]he plaintiff did not name the department of industry, labor and human relations (department) [sic], even though it is clear that it is the state agency which is vested with the responsibility of controlling apprenticeship programs and the indentures of apprentices. This authority stems from § 106.01 Wis.Stats.

"Since the department was not named in the charges filed with the EEOC, it is clear that the Department may not be sued under Title VII. The plaintiff acknowledges that the department was not charged in the EEOC proceedings and recognizes that as a result the department may not be brought in as a party in this law suit [sic].

"It is equally clear that Mr. Tillman's discharge stemmed not from the defendant city [sic] of Milwaukee but from the department. The affidavit of David Ku-

---

1. The "Training Advisory Committee," consisting of three union representatives, plus one alternate, and three Department of Public Works management representatives, plus one alternate, was established to make recommendations to the Superintendent of the Bureau of Traffic Engineering and Electrical Services concerning the following matters:
   (1) Qualifications for applicants;
   (2) Development of training assignments under the Training Program;
   (3) Promotion of apprentices upon successful completion of the program;

(4) Removal of unsatisfactory apprentices from the program; and,
(5) Standards of apprenticeship, which include work experience and related instruction required of apprentices.

2. An "apprentice indenture" is a written contract binding an apprentice to an employer for a given length of time. The City of Milwaukee's Electrical Mechanic apprentice program pertaining to Tillman was based on a four-year indenture agreement.

emmel demonstrates conclusively that it was the department, not the city of Milwaukee, which terminated the indenture agreement and brought about the discharge of the plaintiff. Whatever role the city played in the process was tangential and secondary, since the department, by law, was in control of the program. Under the circumstances, I am persuaded that an indispensable party, namely the state department of industry, labor and human relations is not within the jurisdiction of the court, and accordingly, the defendant's motion to dismiss this complaint must be granted."

The district court in dismissing Tillman's complaint found that DILHR was an indispensable party to the action under Rule 19 of the Federal Rules of Civil Procedure whose joinder was not feasible.[3] On appeal, Tillman argues that the district court erred in concluding that DILHR was an indispensable party whose absence necessitated the dismissal of the action.

### II.

Tillman presents two issues on appeal. First, he argues that The Department of Industry, Labor and Human Relations was not a party to be joined "if feasible" under Fed.R.Civ.P. 19(a) because complete relief could have been accorded in its absence.

Second, Tillman argues that even assuming DILHR was a party to be joined if feasible, the district court erred in failing to order the Department joined in the action under Fed.R.Civ.P. 19(a).

### III.

The proper analysis to be employed by a trial court in considering matters of compulsory joinder was extensively addressed by this court in *Le Beau v. Libby-Owens-Ford Company*, 484 F.2d 798 (7th Cir.1973). The two subsections of Fed.R.Civ.P. 19 set out a two-step inquiry:

"First, is the absent party a person 'to be joined, if feasible'; and, second, if not feasible should the court in equity and good conscience allow the action to proceed or treat the absent party as indispensible [sic]. The desirability of joining a party depends on whether (1) complete relief can be granted in his absence; and (2) whether his interests will be prejudiced or those already parties will be subjected to a substantial risk of incurring inconsistent obligations. Where joinder is desirable but not feasible, the Rule provides criteria for determining whether the suit should be dismissed; the possible prejudice to the absent person or to those who are parties resulting from the entry of the judgment; the possibility of shaping relief to avoid such prejudice; the

---

3. Fed.R.Civ.P. 19, entitled *Joinder of Persons Needed for Just Adjudication,* provides:

"(a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue

and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) *Determination by Court Whenever Joinder not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

adequacy of the judgment entered in the person's absence; and the alternatives that are available to the complainant if the action is dismissed for nonjoinder."

*Le Beau,* 484 F.2d at 800.

"The application of Rule 19, of course, turns on the facts of each case." *Le Beau,* 484 F.2d at 800. A review of the district court's application of Rule 19 requires pragmatic consideration of the roles and interests of Tillman, DILHR and the City of Milwaukee vis-a-vis the terminated apprentice indenture at issue.

### A.

▓ Under Fed.R.Civ.P. 19(a) it is desirable to join a party where (1) complete relief cannot be accorded in his absence or (2) interests of the absent party will be prejudiced or the persons already parties will be subject to a substantial risk of incurring inconsistent obligations. *Le Beau,* 484 F.2d at 800. If a party fulfills either of the preceding two criteria, then, according to the terms of Rule 19(a), it is a "person to be joined if feasible." Although Tillman argues that complete relief can be accorded without joining DILHR as a party, the district court decided otherwise, noting that DILHR is the state agency vested with the responsibility of controlling, supervising and approving apprenticeship programs and the indentures of apprentices. As the essential relief sought by Tillman was "reinstatement to an apprenticeship program," specifically the Electrical Mechanic Apprenticeship Program, "with retroactive seniority," it is more than obvious that the agency (DILHR) created by statute to supervise, direct and regulate apprenticeship programs and indentures was a necessary party to the determination of what, if any, relief could be afforded the plaintiff-appellant Tillman.

▓ Pursuant to Chapter 106 of the Wisconsin Statutes, the Department of Industry, Labor and Human Relations regulates apprenticeship programs within the State of Wisconsin, including the use and annulment of indentures. Wis.Stats. § 106.01(8) specifically recites that "[a]ny indenture may be annulled by the [DILHR] upon application of either party and good cause shown." The Department of Industry, Labor and Human Relations is granted the power to "issue rules and regulations" and "hold hearings and make findings and render orders" in furtherance of its responsibility to oversee Wisconsin apprenticeship programs by virtue of Wis.Stats. § 106.01(9). Under its rule-making power, the DILHR has adopted Wis.Admin.Code § Ind. ch. 95. Wis.Admin.Code § Ind. ch. 95.07 provides, in pertinent part:

"(1) All apprenticeship indentures shall be made upon the blank forms provided by the department.

"(2) No indenture shall be considered in force unless it has the approval of the department.

\* \* \* \* \* \*

"(6) Upon the completion, interruption or proposed termination of any apprenticeship indenture the employer shall notify the department immediately stating the reasons therefor.

\* \* \* \* \* \*

"(8) The terms of an existing indenture may be modified subject to approval of the department."

The Department of Industry, Labor and Human Relations has established a procedure for the enforcement of indenture agreements, Wis.Admin.Code § Ind. 95.20. Regarding hearings to consider complaints concerning indenture agreements, Wis.Admin.Code § Ind. 95.20(4) provides, in pertinent part:

"(a) The division shall hold a hearing when a timely request is made . . . on any complaint alleging that the provisions of the indenture agreement are not being complied with by a party to the agreement . . . .

"(b) Examples of violations of the indenture agreement which may be appropriate subject matter for a hearing on a complaint to the division under this chapter include but are not limited to:

\* \* \* \* \* \*

"(5) That the apprentice is not satisfactorily progressing in the training or schooling required under the indenture agreement."

Based upon a review of the foregoing, it is clear that the Wisconsin Legislature and the Department of Industry, Labor and Human Relations, by statute and administrative rule, have set forth a comprehensive system governing the contractual conditions of indenture agreements, their modification and annulment. Interests of the DILHR are implicated whenever agreements are amended or annulled.

In accordance with the statutory and administrative rule framework governing apprenticeship indentures, the plaintiff Tillman and a representative of the City of Milwaukee signed a DILHR approved Apprentice Indenture form providing, *inter alia,* that:

"(1) The Department of Industry, Labor and Human Relations may annul this indenture upon application of either party after a satisfactory showing of good cause.

"(2) The Department of Industry, Labor and Human Relations shall issue a certificate of apprenticeship to the apprentice who has satisfactorily completed the terms of this indenture."

The indenture was subsequently approved by DILHR on March 5, 1979.

After the City of Milwaukee removed Tillman from his duties on January 20, 1981 (for the stated reason that he was not making sufficient progress in his apprenticeship program), the City requested that the DILHR annul his indenture agreement. The plaintiff filed a written objection with the DILHR concerning the cancellation of his indenture and alleged that he had been subject to unfair and unequal standards by the Bureau of Traffic Engineering and Electrical Services of the City of Milwaukee.[4] Hearings were subsequently held before a DILHR examiner, on October 6 and 21, 1981, who found that Tillman's "unsatis-

factory work progress and his poor attendance constitutes a breach of the indenture under Section 106.01(5j) and good 'cause' under Section 106.01(8) Wisconsin Statutes for termination of [Tillman's] indenture."

The plaintiff in seeking reinstatement to his former position as an indentured apprentice in the City of Milwaukee's Electrical Mechanic apprentice program failed to name the Wisconsin Department of Industry, Labor and Human Relations as a party defendant although it is clear that DILHR exercises direct control over indentures such as would be necessary for the plaintiff to regain his apprentice status. This control is evidenced by the comprehensive legislative and administrative structure established to regulate apprenticeship indentures.

Our review of the case law construing Fed.R.Civ.P. 19, the Wisconsin Statutes and the Wisconsin Administrative Code convinces us that the district court correctly determined that DILHR was a necessary party within the framework of Fed.R.Civ.P. 19(a) as complete relief could not be accorded in the department's absence because of the agency's control of apprenticeship programs and apprenticeship indentures in Wisconsin.

**B.**

After holding that DILHR was a required party to the instant action, the district court seemed to indicate that joinder was not feasible in the following language: "Since the department was not named in the charges filed with the EEOC, it is clear the department may not be sued under Title VII." Tillman contests the district court's holding and argues that the district court erroneously concluded that DILHR could not be made a party defendant by confusing the Title VII statutory "jurisdictional" requirements with subject matter jurisdiction. The plaintiff bases his argument upon the Supreme Court's decision in *Zipes v. Trans World Airlines, Inc.,*

---

**4.** We are unable to ascertain from the record the exact nature of the alleged "unfair and unequal standards" that Tillman contended to the DILHR he was subjected to.

455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

As this court recently stated:

"In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the court held that 'filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'"

*Liberles v. County of Cook,* 709 F.2d 1122, 1125 (7th Cir.1983). *See Jackson v. Seaboard Coast Line R. Co.,* 678 F.2d 992, 1009–10 n. 24 (11th Cir.1982) ("If the failure to file an EEOC complaint does not deprive courts of subject matter jurisdiction, then the naming of a defendant as a respondent in an EEOC charge cannot be essential to the courts' subject matter jurisdiction").

We hold that in summarily disposing of Tillman's complaint after determining that DILHR should have been joined as a party, the district court improperly construed the requirement that a timely charge be filed with the EEOC as a jurisdictional prerequisite to a suit in federal court. On the skeletal record before this court we are unable to make a determination whether the "remedial purposes" of Title VII, *Liberles,* 709 F.2d at 1125, would best be served by a balancing of equitable considerations involved herein as no such question was raised or argued before the court below.[5] *See Evans v. Sheraton Park Hotel,* 503 F.2d 177, 183 (D.C.Cir.1974).

### IV.

The judgment of the district court is remanded for disposition in accord with this opinion.

---

**5.** If upon review the district court determines that DILHR cannot be joined as a party to this action, Fed.R.Civ.P. 19(b) requires that the court determine whether in equity and good conscience the action should proceed between Tillman and the City of Milwaukee. Rule 19(b) outlines several factors that should be considered by the court.