**NEW YORK AIR BRAKE CORPORATION,**
Plaintiff,

v.

**GENERAL SIGNAL CORPORATION; International Association of Machinists & Aerospace Workers Local No. 761; International Association of Machinists & Aerospace Workers Local No. 761A, Defendants.**

No. 92–CV–356 (FJS) (DNH).

United States District Court,
N.D. New York.

Feb. 7, 1995.

Bond, Schoeneck & King (L. Lawrence Tully, of counsel), Watertown, for plaintiff.

Devorsetz, Stinziano, Gilbert & Smith (Lawrence A. Zimmerman, of counsel), Syracuse, NY, for defendant General Signal Corp.

Boyle & Cantone (Earl P. Boyle, of counsel), Syracuse, NY, for defendant Intern. Ass'n of Machinists & Aerospace Workers, No. 761.

Blitman & King (Donald D. Oliver and Kenneth L. Wagner, of counsel), Syracuse, NY, for defendant Intern. Ass'n of Machinists & Aerospace Workers, No. 761A.

## DECISION AND ORDER

SCULLIN, District Judge.

Presently before this court is the October 7, 1994, Report and Recommendation of Magistrate Judge David N. Hurd, recommending that an agreement entered into by the parties on April 9, 1993, ("Good Friday

Agreement") be implemented in the form of a settlement order. Alternatively, Magistrate Hurd recommended that the matter be remanded to an arbitrator for determination as to whether the meeting on April 9, 1993, ("Good Friday Meeting") resulted in an agreement between the parties to settle the dispute. No objections to this Report–Recommendation have been filed. Upon review of the entire file, this court adopts the Report–Recommendation and rejects the alternate recommendation contained therein.

## DISCUSSION

The parties to this action stipulated to final and binding arbitration and proceeded to and participated in an arbitration hearing on August 6, 7, September 15, and October 6, 1992. The arbitrator issued his decision and award dated March 30, 1993. The parties entered into negotiations on April 9, 1993 (the "Good Friday Meeting") concerning the award. Thereafter, a proposed award was submitted for approval by this court. Defendant International Association of Machinists & Aerospace Workers ("IAMA") Local No. 761 objected to this proposed order.

Three motions are now before the court: (1) a motion by plaintiff to confirm an arbitration award and enforce the terms of the agreement entered into on April 9, 1993; (2) a motion by defendant IAMA Local 761A for summary judgment confirming the arbitration award and enforcing the agreement entered into on April 9, 1993; and (3) a motion by IAMA Local 761 to remand the decision of the arbitrator back to arbitration for further proceedings.

The motions were referred to Magistrate Judge David N. Hurd for the purposes of holding an evidentiary hearing regarding the "Good Friday Meeting." An evidentiary hearing was held by Magistrate Hurd on July 21, 1994, after which a Report–Recommendation was issued.

In accordance with that Report–Recommendation, the court finds that on April 9, 1993, the parties mutually agreed to settle the action ("Good Friday Agreement") pursuant to the terms set forth herein. The settlement is, therefore, approved and shall be implemented as follows:

1. Individuals eligible to transfer by reason of seniority and PD–44 qualifications from Dynapower/Stratopower Division of General Signal Corporation to New York Air Brake Corporation, pursuant to the Supplemental Agreement, shall be offered the opportunity to transfer to jobs available as of April 2, 1993. (Hereinafter, said eligible individuals who accept an offer of employment from New York Air Brake Corporation shall be referred to as "transferring" employees. This term shall not include former employees of General Signal Corporation, Dynapower/Stratopower Division, who are placed on the list of laid off employees of New York Air Brake Corporation, as described in Paragraph 2 of this order.)

2. Any former bargaining unit employee of General Signal Corporation, Dynapower/Stratopower Division, who was on the seniority list as of February 13, 1992, and who is unable to transfer by reason of seniority and PD–44 qualifications to a job at New York Air Brake Corporation pursuant to the Arbitrator's Award of March 30, 1993, shall be placed on the New York Air Brake list of laid off employees in the position determined by the individual's seniority, and shall thereafter retain any and all, but only, those rights provided for by the labor agreement between New York Air Brake Corporation and Local Lodge 761 ("Labor Agreement").

3. The Local Lodge 761A President, the Local Lodge 761 President, and the New York Air Brake Labor Relations Manager shall constitute a committee whose function is to resolve all questions concerning application of seniority and PD–44 qualifications to employees seeking to transfer to New York Air Brake Corporation. All majority decisions of the committee will be final and binding on the parties and all affected employees.

4. Any former bargaining unit employee of General Signal Corporation, Dynapower/Stratopower Division, whose wage rate at termination was a red-circled rate based on a former piece-rate, and who transfers to a job formerly paid at piece-rate at New York Air Brake Corporation shall be paid by red-circled wage rate, unless the Labor Agreement contains a wage rate higher than the trans-

ferring employee's wage rate at termination. Transferring employees entitled to such a red-circled rate shall receive the lower of the worker's former red-circled rate at Dynapower/Stratopower or $14.08 per hour. Any transferring employee entitled to a red-circled wage rate at New York Air Brake Corporation shall be subject to all limitations on red-circled piece-rates contained in the Labor Agreement. Any worker who transfers with a red-circled wage rate from piecework shall be subject to all contractual limitations on red-circled piece-rates that apply to employees under the Labor Agreement.

5. Any employee transferring to New York Air Brake Corporation shall earn vacation credit for 1994 as of January 1, 1993, and furthermore, shall be entitled to two (2) weeks paid vacation for 1993, provided, however, that anyone who transfers and who worked less than 1400 hours during 1992 shall be entitled to up to an additional five (5) days of vacation during 1993 as determined by the rules in the Labor Agreement concerning accrual of vacation time. All vacation scheduling shall be subject to the requirements of the Labor Agreement between New York Air Brake Corporation and Local Lodge 761.

6. Any employee transferring to New York Air Brake Corporation shall be reimbursed by New York Air Brake Corporation for the out-of-pocket expense for health insurance premiums incurred by exercising his/her COBRA option by obtaining other health insurance coverage. In addition, any transferring employee shall be reimbursed by New York Air Brake Corporation for out-of-pocket expense for medical care up to $5,000.00, which amount shall be the maximum payable for any employee or for the employee and dependents, if the employee had dependent coverage. All reimbursement for out-of-pocket expense for medical care shall not exceed the schedule of payments prescribed by the health insurance policy contained in the Labor Agreement. All health insurance reimbursement shall be subject to the same percentage copayments required during the period prior to April 1, 1993, for New York Air Brake employees under the Labor Agreement, and shall be

paid only upon submission of proper documentation on or before June 30, 1993.

7. Any employee transferring to New York Air Brake Corporation shall receive pension credit under the New York Air Brake Corporation pension plan effective the date the worker was laid off by General Signal Corporation.

8. New York Air Brake Corporation shall reimburse Lodge 761A's legal fees and disbursements in the amount of $43,149.62.

9. Employees transferring to positions with New York Air Brake Corporation shall receive no back pay for any period of unemployment since being laid off by General Signal Corporation.

Therefore it is hereby

ORDERED, that the "Good Friday Agreement" is a binding settlement of the grievance pursuant to Section 301(a) of the Labor–Management Relations Act; it is further

ORDERED, that the motions to confirm the arbitration award or to remand to the arbitrator are DENIED.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

HURD, United States Magistrate Judge.

### I. *Introduction.*

This matter was referred to the undersigned by District Judge Frederick J. Scullin, Jr., to hold an evidentiary hearing regarding the so-called "Good Friday Meeting," and to file a Report–Recommendation addressing the motions at issue. Presently before this Court are three motions: (1) a motion by plaintiff New York Air Brake Corporation ("New York Air Brake") to confirm an arbitration award and enforce the terms of an agreement entered into on April 9, 1993; (2) a motion by defendant International Association of Machinists & Aerospace Workers ("IAMA") Local 761A ("Local 761A") for summary judgment confirming the arbitration award and enforcing the agreement entered into on April 9, 1993; and (3) a motion by defendant IAMA Local 761 ("Local 761") to remand the decision of the arbitrator back to arbitration for further proceedings.

A hearing was conducted in Syracuse, New York, on July 21, 1994. Seven witnesses were examined during the hearing. Paul M. Sansoucy, attorney with Bond, Schoeneck & King, who has represented plaintiff since 1990; Ernest J. Clemons, President of Local No. 761A in 1992 (filed initial grievance); Steven A. Fayette, Vice President of Local No. 761A on April 9, 1993; Daniel G. Brownell, Vice President of Human Resources at New York Air Brake; Ronald H. Dwyer, Labor Relations Manager for Knoor Air Brake Company, parent to New York Air Brake; Thomas Madill, President of Local No. 761 on April 9, 1993; and Arthur R. Gamble, Directing Business Representative for IAMA with District 137, all testified at the hearing.

## II. *Facts.*

Local No. 761 is the collective bargaining representative for production and maintenance workers at New York Air Brake, and the two are parties to a collective bargaining agreement effective from March 1, 1992, through April 9, 1995. Local No. 761A is the collective bargaining representative for production and maintenance workers formerly at co-defendant General Signal Corporation ("General Signal") Dynapower/Stratopower plant in Watertown, New York.

New York Air Brake is a division of General Signal. Local No. 761, General Signal, and Local No. 761A, were parties to a Supplemental Agreement dated January 15, 1991, which, among other things, provided certain transfer rights to employees of both companies should either company close its plant or move out of Jefferson County, New York, prior to April 8, 1992.

On February 14, 1992, General Signal announced that it would relocate to a new facility in the South Carolina or Georgia areas, and that such relocation would begin in June 1992, and be completed by October 1992. That same day, New York Air Brake apparently announced its position that the transfer rights of General Signal employees affected by the relocation of the plant had not been triggered by General Signal's announcement.[1]

On March 6, 1992, Local No. 761A presented a grievance to New York Air Brake and General Signal on behalf of all employees affected by the announced relocation. The grievance requested arbitration, complaining that New York Air Brake's refusal to allow affected employees an opportunity to transfer to New York Air Brake violated paragraph three of the Supplemental Agreement. That same day, New York Air Brake initiated a state court action seeking a declaratory judgment as to their rights under the Supplemental Agreement. On March 20, 1992, the defendants jointly removed the action to federal court.

In its answers, Local Nos. 761 & 761A counterclaimed to compel New York Air Brake to submit to final and binding arbitration. The parties agreed by stipulation, and Judge Scullin ordered, the parties to submit to binding arbitration "on the issue of the meaning and application of the ... Supplemental Agreement with respect to the rights of affected bargaining unit employees of defendant General Signal Corporation to transfer to New York Air Brake pursuant to Section 3 of said agreements." (Stip. and Ord., June 5, 1992). After arbitration proceedings, the arbitrator issued a decision and award dated March 30, 1993, and found that New York Air Brake did violate the Agreement and held that it must offer displaced General Signal employees positions on a seniority basis, plus back pay.

On April 9, 1993, representatives of New York Air Brake and Local Nos. 761 and 761A met to discuss various issues concerning the implementation of the arbitration award (the meeting is referred to as the "Good Friday Meeting," due to the fact that April 9, 1993, fell on the Christian holiday, Good Friday.)[2]

---

1. New York Air Brake contends that the Supplemental Agreement specified that the closing of the plant must occur prior to April 8, 1992—the date on which the Supplemental Agreement expired—in order for the transfer provision to become effective. General Signal's announcement stated that the move would begin in June 1992, and be completed in October 1992.

2. Those present at the Good Friday Meeting were as follows: Paul M. Sansoucy, Esq., Ronald Dwyer and Daniel Brownell on behalf of New

After an all day meeting, the participants to the Good Friday Meeting agreed to an implementation plan that was acceptable to all concerned. The parties then submitted to the court a proposed order (the "Good Friday Agreement") for the court's approval to implement the arbitrator's award. Local No. 761 took issue with the court signing the proposed order and now objects to the court ordering the parties to comply with the terms of the Good Friday Agreement on the ground that the court lacks jurisdiction.

The issue before this Court is whether the meeting on April 9, 1993, resulted in a settlement of the case, a modification of the Arbitrator's award, a plan to implement the award, or no agreement at all.

## III. Discussion.

### A. Recommendation.

 This action was removed from state court and brought to Federal District Court based upon the existence of a federal question under § 301 of the Labor–Management Relations Act. (Def.Not. of Removal, March 20, 1992); *See also* 29 U.S.C.A. § 185 (West 1978). The District Court held jurisdiction pursuant to that statute as well as jurisdiction to review the collective bargaining agreement, determine if arbitration was required, and send the suit to arbitration. *Int'l Ass'n of Heat and Frost Insulators and As-*

*bestos Workers Local 66 v. Leona Lee Corp.*, 434 F.2d 192, 194 (5th Cir.1970). The District Court sent the controversy to arbitration, retaining jurisdiction pending arbitration by means of the language of the stipulation and order to arbitrate, executed on June 5, 1992, which stated: "The United States District Court for the Northern District of New York (Hon. Frederick J. Scullin, Jr.) will retain jurisdiction of this action during the pendency of the arbitration proceeding for the limited purpose of effectuating this stipulation and order to arbitrate." (Stip. and Ord., June 5, 1992).[3]

The three motions enumerated above focus upon the primary question underlying the resolution of this action—what was the purpose and result of the Good Friday Meeting? The meeting allegedly resulted in an agreement that was reduced to a writing, but never signed by the parties.[4] It was submitted in the form of a court order for court approval, but was ultimately rejected by one party. The agreement stood upon an apparent oral agreement allegedly consummated with handshakes at the termination of the Good Friday Meeting. It must be determined if there was an agreement, and if so, whether the agreement was intended to settle the case and override the arbitration award, modify it, or simply implement it.

The arbitrator's award itself sparked the meeting. No party to the arbitration dis-

---

York Air Brake Corporation; Earl P. Boyle, Esq., Arthur R. Gamble, Thomas Madill, Charles Mahaffy and Philip Muldevan on behalf of Local No. 761; and Donald D. Oliver, Esq., Kenneth L. Wagner, Ernest J. Clemons and Steven A. Fayette on behalf of Local No. 761A.

**3.** Additionally, a federal court has jurisdiction to vacate or modify an arbitrator's award, but only in very limited circumstances as specified in the Federal Arbitration Act. 9 U.S.C.A. §§ 1 et seq.; *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir.1991).

A federal court has jurisdiction to vacate an award: "... (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10 (West 1970).

A federal court has jurisdiction to modify or correct an award: "(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the

award; (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; (c) Where the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C.A. § 11 (West 1970).

However, the issue at bar involves *not* flaws in the arbitration award calling for vacation or modification of the award, but the enforcement of an apparent settlement agreement intended to override the award, which took place after the award was rendered. Therefore, this court sees no purpose in addressing the question of jurisdiction to vacate or modify that award.

**4.** The agreement was never signed by the participants to the Good Friday Meeting solely because the parties, particularly Local No. 761, expressed concern about placing their name on the document for political reasons. They advocated instead, approval by means of submission of the agreement to the court as a proposed order.

played satisfaction with the results. New York Air Brake sought to be relieved of the back pay obligation; Local 761 wanted to ensure that transferring employees did not receive a higher rate of pay than those New York Air Brake employees already covered by the existing labor agreement; and Local 761A desired to secure the right of nontransferring employees to go on an out-of-work list in order of seniority. Each party foresaw difficulties with the arbitrator's award, and entered this meeting with the intention of resolving those difficulties.

■ It must first be determined whether the parties possessed the authority to settle this grievance subsequent to a final and binding arbitration award being issued. For without that authority, even an intended and clearly expressed settlement could not survive.

The language of the collective bargaining agreement made explicit reference to the parties' authority to settle disputes, stating, "Nothing contained herein shall be construed as preventing the Company and the Union from settling by mutual agreement prior to final decision, any dispute or grievance submitted to arbitration hereunder." (Def. 761A's Cross–Mot. for Sum.J., Ex. A at 24; Agreement Between New York Air Brake and the International Association of Machinists & Aerospace Workers, Lodge No. 761, District 137, Effective April 10, 1990).

No "final decision" existed because at the time of the Good Friday Meeting, the award had not yet been confirmed by a federal court. "[U]nder the Federal Arbitration Act, decisions by arbitrators must be confirmed by a federal court in order for it to be enforceable. Indeed, an arbitrator's decision is not final until it is confirmed." *Hatzlachh Supply, Inc. v. Moishe's Elec., Inc.*, 848 F.Supp. 25, 28 (S.D.N.Y.1994) (citations omitted) (citing *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 82 (2d Cir.1984)); *contra Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.").

Finally, it is inherent in the adversarial system in which this country operates, that parties to litigation or dispute hold the authority to settle that litigation or dispute outside the confines of the court at any time before, during, or after the conduct of the proceedings. Basic contract principles mandate such a view. Judicial economy mandates such a view. Justice mandates such a view. Contract principles point to the view that any executory contract may be modified or rescinded, upon mutual agreement, even on the eve of execution. Why then should these three parties be bound to a decision not yet final, which all mutually agree cannot stand? Likewise, binding parties to a mutually unacceptable decision or award and virtually guaranteeing future litigation time and expense flies in the face of judicial economy. Finally, where parties to a dispute have the capacity and wherewithal to reach an acceptable solution, and neither views the system's attempt at a solution to be acceptable, to then hold the parties to such an attempt would do a double injustice. For in such a situation, not just one party or another, but all, fail to achieve justice.

In addition, all of the participants in the Good Friday Meeting (*see* footnote 2) had express or implied authority to settle and bind their principals to an agreement. The by-laws of Local No. 761—the only party opposing the implementation of this agreement—expressly provide for a general committee, comprised of the president, vice president, and one committeeman, "to adjust all grievances that may arise between members and the foremen or other officials of the company. They shall have the power to make settlement in all cases where it is possible to do so." (Def. Local 761A Mem. of Law at 23). "A union does not act unfairly when if (sic) fails to consult with or advise a grievant of its bargaining activities, nor in the legitimate exercise of its discretion, need it obtain the employee's consent before settling a grievance." *Caputo v. National Ass'n of Letter Carriers*, 730 F.Supp. 1221, 1230 (E.D.N.Y.1990) (cites omitted). The representatives participating in the Good Friday Meeting were the duly elected or appointed officers and attorneys for each party and possessed the authority to settle this dispute.

■ Neither is there a need for a settlement agreement to be in writing, signed by the parties. The Second Circuit, in determining whether an oral settlement agreement was enforceable, stated:

Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document. This freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement. In such a case, the mere intention to commit the agreement to writing will not prevent contract formation prior to execution.

*Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78, 80 (2d Cir.1985), *cited in Grupo Sistemas Integrales De Telecomunicacion S.A. De C.V. v. A.T. & T. Communications, Inc.,* No. 92–CV–7862, 1994 WL 463014 at *2 (S.D.N.Y. Aug. 24, 1994). The Second Circuit outlined four factors to examine in determining the intent of the parties to be bound without a signed writing. They are: (1) whether there was an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract usually committed to a writing. *Winston* 777 F.2d at 80. None of the four factors enumerated call for any conclusion but that a contract was entered into by the parties.

The Supreme Court in *Retail Clerks International Assoc., Local Nos. 128 and 633 v. Lion Dry Goods, Inc.,* 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), dealt with a labor dispute allegedly settled when the parties, through a mediator, compiled an unsigned "Statement of Understanding" containing the points of settlement. In determining whether this agreement fell within the definition of "contract" so as to be enforceable under § 301(a) of the Labor Management Relations Act, the Court stated "[i]t is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them.... 'Federal courts should enforce these agreements on behalf of or against labor organizations and ... industrial peace can be best obtained only in that way.' " *Id.* at 28, 82 S.Ct. at 548 (quoting *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957)).

■ Since the parties possessed the authority to settle the grievance, and signatures were not required to bind them, the Court must next determine if the Good Friday Meeting culminated in a settlement in the form of the Good Friday Agreement. The July 21, 1994 hearing uncovered several factors supporting the conclusion that there was a mutual agreement and that this Good Friday Agreement, although couched in the framework of an order to implement the arbitration award, held at its core a settlement of the dispute that reached beyond the realm of the award.

Specifically, several factors pointed to the existence of an enforceable settlement. The meeting itself took over eight hours to conclude. Back pay, originally awarded in the arbitration award, was absent from the agreement as unworkable. Significant details and other matters were agreed upon which were never even submitted to or considered by the arbitrator. Prior to conclusion, New York Air Brake Vice President for Human Resources, Dan Brownell, reviewed one by one, the nine items over which the participants had negotiated; and one by one all of the participants individually agreed to the solutions reached. The meeting concluded with handshakes between the participants. The participants spent the next several days modifying the wording of the proposed order effectively reducing the agreement to writing. Based upon the above, the court finds that a valid agreement was reached between the parties—the so called "Good Friday Agreement." This Good Friday Agreement was then submitted to Judge Scullin for approval in the form of a proposed order. Local No. 761 objected solely upon the grounds that the court lacked jurisdiction to alter an arbitration award and that the parties lacked authority to enter into such an agreement. Local No. 761 did state however, that if

jurisdiction was found, they would honor the agreement.[5]

■ Having determined that the Good Friday Agreement was authorized and approved by all parties, and was intended as a settlement, the only remaining issue is the Court's jurisdiction to enforce that settlement. Local 761A argues that Section 301(a) of the Labor–Management Relations Act gives a court the power to decide the enforceability of a contract settling all disputed issues arising out of the implementation of an arbitration award. They point to the Third Circuit which stated:

Although the majority of cases brought under Section 301 are actions to enforce contractual promises to arbitrate or to enforce arbitration awards already rendered, it is indisputable at this point that any means chosen by the parties for settlement of their differences under a collective bargaining agreement can be judicially enforced in federal court as long as the settlement is final and binding under the contract.

*United Mine Workers, Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 809 (3d Cir. 1981) (action brought by union to enforce a settlement agreement between company and union affecting the contracting out of repair and maintenance work). This Court agrees.

"Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role. Certain settlements require judicial approval, however, and on other occasions parties are unwilling to drop litigation unless a court invokes its equitable powers to enforce their agreement." *Masters Mates & Pilots Pension Plan v. Cullen*, 957 F.2d 1020, 1025 (2d Cir.1992) (cites omitted). The parties entered into an agreement at the Good Friday Meeting. They then effectuated that agreement in a writing and submitted that agreement to the court to be enforced after approval and signature by the court. Only because of the jurisdiction objection raised by Local No. 761, was the proposed order not signed.

When a settlement—mutually agreed to by the parties involved and meant to override an arbitration award—is reached, this Court retains jurisdiction to confirm and enforce such an agreement. The Third Circuit explained:

It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal policy encourages that procedure no less than arbitration. *A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award.*

*United Steelworkers of Am. v. Lukens Steel Co.*, 969 F.2d 1468, 1474 (3d Cir.1992) (emphasis added) (quoting *United Mine Workers of Am. Dist. No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir.1977)).

Therefore, this Court recommends that the Good Friday Agreement be implemented in the form of a settlement order. The motions to confirm the arbitration award or remand to the arbitrator should be denied.

### B. *Alternate Recommendation.*

Should this recommendation prove unacceptable, the Eleventh Circuit, in addressing this issue, diverged down an alternative path. They found that the initial determination as to the existence of a settlement agreement presents a jurisdictional roadblock. Such a determination, they found, remained out of the District Court's reach.

That court recently dealt with a scenario similar to the one at bar. In *Aluminum Brick and Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.*, 991 F.2d 1545 (11th Cir.1993), the issue of whether Alvin Watson was wrongfully terminated proceeded to arbitration according to the collective bargaining agreement. The arbitrator found that Watson should have received a three-day suspension rather than termination, and ordered reinstatement with back pay. The defendant, AAA Plumbing, reinstated Watson and began negotiations with representa-

---

5. Both jurisdiction of the Court to alter an arbitration award, and the authority of the parties to settle the dispute, have been addressed above and found to exist. (*See* pp. 750 et. seq. for discussion on authority; *see* pp. 749 et seq. for discussion on jurisdiction.)

tives of the local union on the amount of back pay due him. The two parties agreed on an amount, and Watson endorsed the check in the form: "By endorsement the endorser hereby acknowledges receipt of this check as settlement of discharge arbitration." *Id.* The international union later objected to the agreement, arguing that the back-pay award had been miscalculated.

As in this case, we have an agreement to submit to binding arbitration; a final and binding award from the arbitrator; a subsequent agreement which arguably alters the contents of the award; and a subsequent objection to the agreement by one of the parties to the arbitration. The Eleventh Circuit stated: "We have held that whether a grievance has been settled is an issue that should be decided by an arbitrator." *Id.* at 1549 (citing *UAW v. Daniel Radiator Corp.,* 328 F.2d 614, 614–15 (5th Cir.1964)).

They noted the Third Circuit's recognition of a limited exception to this rule, but found it to not apply. In *L.O. Koven & Brothers, Inc. v. United Steelworkers of Am. Local Union No. 5767,* 381 F.2d 196 (3d Cir.1967), the court explained this limited exception, stating that when a settlement *"explicitly* discharges the parties from the collective bargaining agreement itself, or from the arbitration provisions thereof," the arbitrator's jurisdiction would no longer reign. *Id.* at 205 (emphasis added). This limited exception pointed to the obvious contractual rule that if the two parties are bound by a contract and no longer wish to be bound, they may mutually agree to the rescission of such a contract. *See In re 2903 Wines & Spirits, Inc.,* 45 B.R. 1003 (S.D.N.Y.1984). However, such a rescission, carrying severe implications to not only the parties involved, but in terms of overall arbitration policy, must be— as the Third Circuit put it—"explicit."

The parties to the Good Friday Agreement made no intention known, explicit or otherwise, to remove any perceived restraints of arbitration. In fact, the language suggests an intention to abide by the award, although the factors included in the agreement point to a very different conclusion.

Therefore, this Court alternatively recommends that the determination as to whether or not the Good Friday Meeting resulted in an agreement to settle the dispute be remanded to the arbitrator. Only that question need be answered. For if it is found that there was an agreement to settle, the District Court must then endeavor to implement that agreement.

Furthermore, if remand is found necessary, the arbitrator's decision should be based upon the transcript of the July 21, 1994, hearing and the existing file, as additional proceedings would constitute an undue burden on both the parties and the system.

Accordingly, it is

RECOMMENDED, that the District Court:

1. Approve the Good Friday Agreement as a settlement of the grievances herein, in accordance with the proposed order attached hereto as Exhibit 1; and

2. Deny the motions to confirm the arbitrator's award or remand to the arbitrator.

Or, in the alternative, it is

RECOMMENDED, that in accordance with the Eleventh Circuit decision in *Aluminum Brick,* the District Court:

1. Remand the matter to the arbitrator for the sole purpose of determining whether the Good Friday Meeting resulted in an agreement to settle this matter, with no other issue to be addressed; and

 a. If the arbitrator finds that there was an agreement constituting a settlement, he is directed to incorporate The Good Friday Agreement into an amended arbitration award for submission to the District Court; or

 b. If the arbitrator finds no agreement or settlement, he is directed to so state, and the original arbitration award be submitted to the District Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report-recommendation. *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992). Such objections shall be filed with the Clerk of the Court with a copy to be mailed to the cham-

bers of the undersigned at 10 Broad Street, Utica, New York 13501. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Dated: October 7, 1994

Utica, New York.